FILED

2011 Sep-23  AM 11:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN  DIVISION

| | | |
|---|---|---|
| **SET FREE COMMUNITY DEVELOPMENT CORPORATION,** | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action Number **2:11-cv-01802-AKK** |
| **v.** | ) ) | |
| **ROBERT BENTLEY,** *et al.*, | ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Before the court are the Defendants' collective motions to dismiss, (docs. 11, 13, & 14), and the Plaintiff's Renewed Motion for Expedited Hearing, (doc.18).  As explained fully below, the court **GRANTS** Defendants' motions to dismiss.

## I. STANDARD OF REVIEW

While Defendants fail to identify the precise rule they invoke to support dismissal, it is clear they challenge the subject matter jurisdiction of this court and assert Plaintiff's failure to plead a federal claim.  Thus, the court will analyze the ripeness arguments and the federal pleading challenges under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See Little v. Strange*, - - - F. Supp. 2d - - -, 2011 WL 2462649, at *1 (M.D. Ala. June 21, 2011).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction asserts either a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007); *see also Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). A factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence*, 919 F.2d at 1529 (internal quotation marks and citation omitted). A facial attack, on the other hand, challenges the complaint on its face and "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *McElmurray*, 501 F.3d at 1251. Under these two approaches, a "court has the power to dismiss for lack of subject matter on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (internal citation and quotation marks omitted).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

2

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. at 1949 (citing *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and

3

common sense." *Iqbal*, 129 S. Ct. at 1950.

On a motion to dismiss under Rule 12(b)(6), the court accepts all of a plaintiff's factual allegations as true. *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 129 S. Ct. at 1950.

## II.  FACTUAL BACKGROUND[1]

Set Free Community Development Corporation ("Set Free") is a not-for-profit Alabama corporation "dedicated to the charitable mission of assisting at-risk students by fighting the human consequences of poor education and economic hardship." Compl. ¶ 12.  For a brief time, Set Free also "operated an electronic charity bingo facility," a practice which Set Free wants to resume.  *See id.*

Defendants are various Alabama state officers: Robert Bentley, Governor, Luther Strange, Attorney General, Arthur Green, District Attorney for Jefferson County, and Mike Hale, Sheriff of Jefferson County.  *Id.* ¶¶ 13-16.

Midfield City enacted an ordinance establishing rules and licensing for bingo operation which allegedly complied with the Alabama Constitutional

---

[1]From the outset, the court notes Set Free's repeated assertion that electronic bingo is legal.  Consistent with the applicable law of this Circuit, the court affords the presumption of truth only to Set Free's factual assertions, not its legal conclusions.  *Iqbal*, 129 S. Ct. at 1950.

amendment legalizing bingo in Jefferson County.  The Midfield bingo ordinance

tracked the criteria defining "bingo" laid out by the Alabama Supreme Court in

*Barber v. Cornerstone Community Outreach*, 42 So. 3d 65, 86 (Ala. 2009).

Because Set Free met Midfield's requirements for a bingo operator, on May 10,

2010, the Midfield City Council unanimously approved the issuance of a bingo

license to Set Free.  Set Free's bingo license for Midfield is currently valid and

effective, and purports to allow it to operate bingo games using a variety of

electronic equipment as long as it maintains 500 electronic bingo machines.

However, the Ordinance notifies parties that "[t]he fact that a license has been

issued under the authority of this Ordinance shall not be evidence at any judicial

proceeding that [Midfield] has taken the position that the operation of licensed

activities is permitted under the laws of the State of Alabama."  Doc. 1-1 at 21.

The Ordinance continues: "In the event that a court of competent jurisdiction

determines that a particular bingo game is not permitted, the License Holder" shall

not collect a refund of license fees or taxes collected.  *Id.*

Pursuant to that license, Set Free began operating on or about June 1, 2010.

Soon thereafter, state officers of former Governor Robert Riley's Task Force on

Illegal Gambling announced their belief that many of the bingo operators were

violating Alabama law and that, as a result, the Task Force would raid such

establishments and seize contraband machines.  On June 4, 2010, three days after

it opened, Set Free shut down its operation voluntarily to avoid a raid, a seizure of

its electronic gaming machines, and a criminal charge.

On January 18, 2011, Governor Bentley dissolved former-Governor Riley's

Task Force because the newly elected Attorney General, Luther Strange,

committed to the enforcement of Alabama's gambling laws.  Attorney General

Strange issued a press release shortly after his election, and confirmed several

times thereafter, making clear his interpretation of Alabama Code Section 13A-12-

20(5) and (10), along with clarifications of how enforcement officers would

interpret and apply recent Alabama Supreme Court precedent.  Defendants also

issued notice to electronic game vendors articulating the state's position that

electronic bingo may not be legal under the state's narrow bingo exception and its

prohibition of slot machines.  The electronic bingo game vendors, including Set

Free's vendor, agreed to remove the machines from Alabama.

Attorney General Strange publically stated also that his office would

prosecute criminal cases that arise from search warrants involving suspected

illegal slot machines in Alabama.  Set Free complains that Defendants'

interpretation of electronic gaming as illegal contravenes the statutory language.

According to Set Free, Defendants' decision to raid certain electronic bingo

6

facilities but allow others to remain open, has left it to choose between remaining closed or engaging in electronic bingo operation in possible contravention of state law.

As a result, Set Free brings this action under 42 U.S.C. § 1983, "challenging the Constitutionality of Alabama Code §§ 13A-12-20 and 13A-12-27." Doc. 1 at 1. The heart of this action centers around the parties' conflicting interpretations of certain provisions of the Alabama Code. However, Set Free couches the basis of its claim as follows: "to prevent officials of Alabama from depriving [it] of rights given to [it] by the United States Constitution" because "[t]wo Alabama criminal statutes are so vague as to prevent [Set Free] from operating [its] lawful business for fear of being subjected to unreasonable search and seizure, charged with a crime without due process, deprived of equal protection under the law and having private property taken without just compensation." Doc. 2 at 1-2.

(A) Relevant Alabama Code Provisions

The provisions Set Free references are found in the Alabama Code under Title 13A, Alabama's Criminal Code, Chapter 12, Offenses Against Public Health and Morals, Article 2, for Gambling Offenses. Section 13A-12-20 provides the following relevant definitions:

(4) GAMBLING. A person engages in gambling if he stakes or

7

risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome. Gambling does not include bona fide business transactions valid under the law of contracts, including but not limited to contracts for the purchase or sale at a future date of securities or commodities, and agreements to compensate for loss caused by the happening of chance, including but not limited to contract of indemnity or guaranty and life, health or accident insurance.

(5) GAMBLING DEVICE.  Any device, machine, paraphernalia or equipment that is normally used or usable in the playing phases of any gambling activity, whether that activity consists of gambling between persons or gambling by a person involving the playing of a machine. However, lottery tickets, policy slips and other items used in the playing phases of lottery and policy schemes are not gambling devices within this definition.

. . .

(10) SLOT MACHINE.  A gambling device that, as a result of the insertion of a coin or other object, operates, either completely automatically or with the aid of some physical act by the player, in such a manner that, depending upon elements of chance, it may eject something of value. A device so constructed or readily adaptable or convertible to such use is no less a slot machine because it is not in working order or because some mechanical act of manipulation or repair is required to accomplish its adaptation, conversion or workability. Nor is it any less a slot machine because apart from its use or adaptability as such it may also sell or deliver something of value on a basis other than chance.

Additionally, Alabama Code §13A-12-27 makes possession of gambling devices a crime:

8

(a) A person commits the crime of possession of a gambling device if with knowledge of the character thereof he manufactures, sells, transports, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of:

> (1) A slot machine; or
>
> (2) Any other gambling device, with the intention that it be used in the advancement of unlawful gambling activity.

(b) Possession of a gambling device is a Class A misdemeanor.

(B) <u>Alabama Constitutional Amendment for Bingo in Jefferson County</u>

In 1980, Amendments 386 and 600 (collectively the "Amendment") amended the Alabama State Constitution by legalizing bingo as a form of gambling in Jefferson County, Alabama.  The Amendment reads:

<u>AMENDMENT 386</u>

Operation of Bingo Games By Nonprofit Organizations in Jefferson County.

The operation of bingo games for prizes or money by nonprofit organizations for charitable or educational purposes shall be legal in Jefferson County, subject to the provisions of any resolution or ordinance by the county governing body or the governing bodies of the respective cities and towns, within their respective jurisdictions. The said governing bodies shall have the authority to promulgate rules and regulations for the licensing and operation of bingo games, within their respective jurisdictions, provided, however, that said governing bodies must insure compliance with the following provisions:

(a) No person under the age of 19 shall be permitted to play any game or games of bingo, nor shall any person under the age of 19 be permitted to conduct or assist in the conduct of any game of bingo;

(b) No bingo license shall be issued to any nonprofit organization, unless such organization shall have been in existence for at least 24 months immediately prior to the issuance of the license;

(c) Bingo games shall be operated only on the premises owned or leased by the nonprofit organization operating the bingo game. If the premises is leased, the rate of rental shall not be based on a percentage of receipts or profits resulting from the operation of bingo games;

(d) No nonprofit organization shall enter into any contract with any individual, firm, association or corporation to have said individual or entity operate bingo games or concessions on behalf of the nonprofit organization, nor shall said nonprofit organization pay consulting fees to any individual or entity for any services performed in relation to the operation or conduct of a bingo game;

(e) A nonprofit organization shall not lend its name or allow its identity to be used by any other person or entity in the operating or advertising of a bingo game in which said nonprofit organization is not directly and solely operating said bingo game;

(f) Prizes given by any nonprofit organization for the playing of bingo games shall not exceed $1,200.00 in cash or gifts of equivalent value during any bingo session or $2,400.00 in cash or gifts of equivalent value during any calendar week;

(g) No person or organization, by whatever name or composition thereof, shall take any salary, expense money, or fees as remuneration for services rendered in the operation of any bingo game.

<u>AMENDMENT 600</u>

Amendment of Amendment No. 386.

Amendment To Subsection (f) of Amendment No. 386

"(f) Prizes given by any nonprofit organization for the playing of bingo games in Jefferson County shall not exceed the amounts set by local law."

The parties agree that playing bingo for money is gambling and that the Jefferson County Bingo Amendment makes bingo a lawful form of gambling in Jefferson County, Alabama.

10

## III.  ANALYSIS

Set Free's complaint alleges a violation of its due process rights, its equal protection rights, its right against unreasonable search and seizure, and the prohibition on a governmental taking of property without payment of just compensation, in so far as those rights are provided under the Fourth, Fifth, and Fourteenth Amendments.  Compl. ¶ 7.  Defendants assert that Set Free is asking this court to intervene in prospective criminal investigations, subject state officers to federal jurisdiction, and analyze the conduct of the prospective criminal defendants, including Set Free, to determine whether their conduct comports with Alabama law.  Doc. 11 at 8.

*(A) Preceding Cases Challenging Alabama Gambling Laws in Federal Court*

As the court understands it, Set Free essentially has two bases for its complaint.  First, that the Alabama Constitution's definition of "slot machine" is unconstitutionally vague and, therefore, void.  Second, that the ongoing threat of a raid for conduct it believes is legal under Alabama law and its inability to acquire a declaratory judgment on that issue constitutes a constitutional violation, supporting a § 1983 action against the state officers who threaten to enforce the law and perform the raid.  Federal courts in this state have recently addressed similar due process and vagueness claims involving Alabama's electronic gaming

regulations.  This court's decision largely echoes and follows the well-reasoned

opinions that precede this case.  Because those cases provide a backdrop and,

importantly, underscore the premature posture and impropriety of Set Free's

purported federal claims, the court presents a sample of these cases in

chronological order.

    (i) <u>Novel Management, Inc. v. Woodward</u>

    In *Novel Management, Inc. v. Woodward*, No. CV 01-BU-1699-S, 2001 WL

1846798 (N.D. Ala. July 13, 2001), Judge H. Dean Buttram considered the

arguments of several video arcade operators who asserted Fourth, Fifth, and

Fourteenth Amendment violations based upon the threat of seizure of alleged

gambling devices and slot machines, which the operators believed were, in fact,

legal.  *Id.* at *1-2.  In the face of the threat of seizure, many of the plaintiffs closed

their arcades.  *Id.* at *2.  Like Set Free here, the plaintiffs in *Novel Mangement*

sought to enjoin the Jefferson County sheriff from seizing their machines,

specifically claiming that any seizure would constitute an unreasonable seizure

under the Fourth Amendment, would violate the Equal Protection Clause of the

Fourteenth Amendment, and that, without a prior hearing, would constitute a

violation of their constitutional rights.  *Id.*  Judge Buttram explained that a federal

district court "cannot declare whether the particular machines in Plaintiffs'

possession are, in fact, illegal gambling devices under Alabama law" because that "is purely a question of state law, and it is simply outside of the province of this Court to decide." *Id.* at *3.

Thus, on a motion for preliminary injunction, Judge Buttram addressed whether the plaintiffs could demonstrate a substantial likelihood of success on the merits with respect to any of their constitutional claims. *Id.* at *4. Judge Buttram denied the requested relief, explaining that the requirement of the state officers to obtain a search warrant prior to seizing the allegedly illegal machines satisfied any potential Fourth Amendment questions. *Id.* He rejected the assertion that plaintiffs' "right to due process of law would be infringed upon if they do not receive some sort of hearing before their machines are subject to being seized by law enforcement." *Id.* Judge Buttram concluded, instead, that while "[t]he Constitution certainly requires that Plaintiffs be permitted at some point to argue that their video machines are in fact legal under state law," it "simply does not require this type of hearing prior to the seizure of their property where it is determined that there is probable cause to believe that such is contraband under state criminal law." *Id.* Judge Buttram reiterated his unflagging duty to ensure the protection of the rights, privileges, and immunities of citizens, but noted simply that the plaintiffs "failed to demonstrate that there is a substantial likelihood that

13

they will be able to show on the merits that the seizure of their machines pursuant to a warrant will work a constitutional deprivation." *Id.* at *5.

(ii) <u>A&M Enterprises, LLC v. Houston</u>

Likewise, in *A&M Enterprises, LLC v. Houston*, 179 F. Supp. 2d 1356 (M.D. Ala. 2001), Judge Ira De Ment dismissed similar claims challenging Alabama gambling prohibitions as unripe.  In *A&M Enterprises*, the plaintiffs, owners of coin operated video machines, sued under § 1983 to enjoin state officers from seizing the allegedly illegal video game machines and from threatening to seize the machines or arrest the plaintiffs.  *Id.* at 1358.  The plaintiffs claimed the machines were legal under the Alabama Code and disagreed with the Alabama Supreme Court's advisory opinion to the contrary.  *Id.*  Thus, the plaintiffs, like Set Free here, alleged that the threatened seizure by the state officers failed to afford reasonable notice, violated their substantive and procedural due process rights, and deprived them of the equal protection of the law, in violation of the Fourth, Fifth, and Fourteenth Amendments.  *Id.* at 1359.

Judge De Ment noted the prudential considerations inherent to the ripeness doctrine, and ultimately dismissed the claims as unripe.  *Id.* at 1360-63.  He noted that "the possibility that a court might venture into the realm of speculation should not categorically curtail review when such a curtailment would entail significant

14

detriment to a party." *Id.* at 1361.  Indeed, "it would be a stringent interpretation of the ripeness doctrine to require that a party 'risk probable criminal sanctions in order to bring a justiciable pre-enforcement challenge,'" an interpretation Judge De Ment did not embrace.  *See id.* (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)).

Crucially, however, he found that "[t]he fatal flaw in Plaintiffs' argument [wa]s the absence of any 'constitutionally protected activity' so as to rightfully invoke the authority of this tribunal." *Id.*  Indeed, while the plaintiffs may be subject to substantial economic harm if their machines are deemed illegal and seized, "so long as the procedures implemented therein do not offend the United States Constitution, they are no concern of the federal judiciary." *Id.*  Judge De Ment continued:

> It may well be that Plaintiffs' activities do not violate the Alabama Constitution, but this is a question for the courts of Alabama.  Plaintiffs have provided the court with no evidence to suggest that Alabama's procedures are inadequate in arriving at this determination.  Absent such support, their allegations amount to mere speculation about contingent future events.  Without more, the court cannot conclude that the issues are fit for adjudication.

*Id.* (internal citation and quotation marks omitted).

Judge De Ment continued by explaining, specifically, why none of the plaintiffs' claims raised a justiciable controversy.  *See id.* at 1361-63.  In light of

15

the state officers' representations that they would secure search warrants before any seizure, Judge De Ment found that the plaintiffs failed to demonstrate any threat of an unconstitutional search or seizure to support a Fourth Amendment claim. *Id.* at 1362. Their equal protection claim failed because the court could not evaluate the rationality of various prosecutions prior to the actual prosecutions and seizures themselves. *Id.* Likewise, the risk of discriminatory enforcement is only available as a basis for equal protection claims in post-enforcement proceedings. *Id.* (citing *Fla. Businessmen for Free Enter. v. Hollywood*, 673 F.2d 1213, 1220 (11th Cir. 1982)). Finally, Judge De Ment rejected the due process challenges as unripe because plaintiffs presented nothing to establish that the state procedures were constitutionally infirm and, in any event, it was not the occasion to evaluate the adequacy of future procedures. *Id.* Thus, Judge De Ment concluded "the present matter does not belong in federal court." *Id.*[2]

(iii) <u>Taylor v. Siegelman</u>

In *Taylor v. Siegelman*, 230 F. Supp. 2d 1284 (N.D. Ala. 2002), the plaintiffs, owners of various electronic gaming establishments who had their

---

[2]Judge De Ment also indicated that, even if the court *could* exercise jurisdiction, the *Younger* abstention doctrine and "serious federalism questions would counsel in favor of restraint." *A&M Enters.*, 179 F. Supp. 2d at 1363 n. 5 ("The matter before the court is solely one of the interplay between Alabama's criminal code and its state constitution.").

games seized, sued state officers under § 1983 for (1) unlawful taking without just compensation, (2) unlawful deprivation of property without due process, (3) violation of due process for seizure of "property denominated contraband" without legal authority, (4) inadequate post-deprivation procedural due process, and (5) unlawful taking because the state scheme was unconstitutionally vague. *Id.* at 1288. Judge Inge Johnson of this court found the plaintiffs' claims entirely outside the scope of her review under the *Younger* and *Colorado River* abstention doctrines.[3]

With respect to the plaintiffs' complaint about the absence of pre- or post-deprivation hearings, Judge Johnson explained:

> [B]efore asserting that state law remedies are inadequate, the plaintiffs must avail themselves of these remedies, which they have not. Under § 15-5-3, Ala. Code and Rule 3.9, Alabama Rules of Criminal Procedure, a search warrant can only be issued on probable cause, supported by an affidavit naming or describing the person and particularly the place to be searched. Under § 15-5-5, Ala. Code, the judge or magistrate must issue the warrant if he or she is satisfied of the grounds of the application or that there is probable ground to believe their existence. Under § 15-5-15, if the ground on which a search warrant was issued should be controverted, the judge must proceed to hear testimony. Under § 15-5-16 and Rule 3.13, Alabama Rules of Criminal Procedure, the judge must direct the property to be restored to the person from whom it was taken if it appears there was no probable cause for

---

[3]*See Younger v. Harris*, 401 U.S. 37 (1971); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

> believing the existence of the ground on which the warrant was issued.
> These state procedures provide a remedy at law which, in essence, is the
> same remedy plaintiffs seek in federal court in the form of an injunction
> and declaratory judgment.

*Id.* at 1291.

Additionally, like Set Free here, the plaintiffs before Judge Johnson also

argued simultaneously that, the machines in question were legal under the section

of Alabama code in question, and on the other hand, that the code was void for

vagueness because it could not be rendered meaningful.  *See id.* at 1294 n. 15.

Noting the irony, Judge Johnson noted that the question was better left for state

courts, but added: "if, as plaintiffs assert, their machines are legal under § 13A-12-

76, the likelihood of plaintiffs seeking to have said Code section found void for

vagueness is minimal."  *Id.*

Most relevant to this case, Judge Johnson next addressed the threatened

seizures and plaintiffs' claims that the threat alone forced the businesses to close

and caused a constitutional harm:

> The court finds that, at most, these plaintiffs allege a prospective taking
> under the Fifth Amendment, but to date have suffered no such taking.
> Having voluntarily closed their businesses to avoid possible future
> forfeiture of their machines, these plaintiffs cannot assert that the state
> laws are inadequate for the return of their property which is still in their
> possession.

*Id.* at 1295.  Judge Johnson then noted the attempt by plaintiffs to plead additional

18

constitutional injuries as part of the unripe takings claim, similar to those Set Free

alleges here:

> The plaintiffs couch this argument in terms of having to forego 'what [they] believe to be constitutionally protected activity in order to avoid becoming enmeshed in another criminal prosecution.' . . . While this court acknowledges that plaintiffs do have a constitutional right to be free from unreasonable seizures, and deprivation of property without due process of law, the court knows of no constitutionally protected right to operate a video arcade, whether the machines in it are legal or not. . . . [T]he plaintiffs here are not engaged in protected expression or 'freedom of thought.'

*Id.* at 1295 n. 20.

Ultimately, Judge Johnson decided *Taylor* on abstention grounds,

concluding that "the very nature of this action makes it a matter of solely state law,

in which this court should not meddle." *Id.* at 1297.

(iv) Lord Abbett Municipal Income Fund, Inc. v. Tyson

More recently, in *Lord Abbett Municipal Income Fund, Inc. v. Tyson*, No.

1:10-cv-477-WKW, 2011 WL 197959 (M.D. Ala. Jan. 20, 2011), Judge Keith

Watkins considered a plaintiff's assertion that "the threat of seizure of the

electronic bingo machines by Defendants creates a constitutional deprivation of its

property interest in the revenues generated by the electronic bingo machines." *Id.*

at *5.  The plaintiff in *Lord Abbett* was a corporation that had purchased bonds

which would be repaid, in large part, based on revenues generated by electronic

19

bingo gaming at a particular Country Crossing venue.  *Id.* at *1.

Like Set Free here, the plaintiff in *Lord Abbett* alleged a deprivation of adequate state law remedy because it could not enforce its property rights because the Alabama Supreme Court rejected jurisdiction over declaratory judgment actions regarding the legality of electronic bingo machines sought to be seized, but not actually seized.  *Id.* at 5.  Likewise, the plaintiff asserted that the Alabama courts have found they have no jurisdiction to interfere with the enforcement of the criminal laws in a civil action.  *Id.*  Finally, like Set Free, the plaintiff sought declaratory and injunctive relief declaring the legality of the bingo gaming machines and enjoining state officers from interfering in their operation.  *Id.* at *5-6.

> Judge Watkins summarized why the court lacked subject matter jurisdiction:
>
> The Fund alleges that it has been deprived of procedural due process by the actions of Defendants enforcing the criminal laws of Alabama relating to the electronic bingo machines at Country Crossing without providing it an adequate remedy.  The Fund's argument fails because it seeks to adjudicate the constitutionality of remedies afforded the Fund under Alabama law based on Defendants' possible future actions. Because there is no allegation of an actual seizure of the electronic bingo machines, and necessarily no cognizable deprivation of the Fund's alleged property right, any procedural due process inquiry at this time would amount to conjecture.  Thus, the Fund's claim is not ripe.

*Id.* at *6.  After noting that procedural due process does not mandate pre-

enforcement review, Judge Watkins explained that because "the owner and operator of the electronic bingo machines lack an absolute right to notice and an opportunity to be heard prior to seizure by Defendants," the plaintiff could not complain of procedural inadequacies based on the lack of such a pre-seizure hearing.  *Id.* at *8.

Particularly related to the case at hand, Judge Watkins further clarified that the "effective" deprivation of property because of a voluntary closure under threat of raid "does nothing to trigger a constitutional deprivation" when dominion and control over the actual property does not change.  *Id.* "Without an actual seizure and with the electronic bingo machines remaining in the possession and ownership of [the bingo operator] and its affiliates, any procedural due process inquiry by this court would amount to pure speculation."  *Id.*  Judge Watkins ultimately dismissed the case on several grounds, including ripeness, noting that the plaintiff, as an income fund and not the bingo operator, was not even the type of plaintiff to which *Ex parte Young*'s limited exception for pre-enforcement review applied. *See id.* at *10.

(v) Set Free Community Development Corp. v. Riley

Finally, the court notes Set Free's previous efforts to secure pre-enforcement review of the threatened seizures in this court.  In *Set Free*

21

*Community Development Corp. v. Riley*, No. 2:10-cv-1769-VEH, Doc. 39 (N.D.

Ala. Dec. 25, 2010), Judge Virginia Emerson Hopkins considered federal

constitutional claims based on the same hypothetical and anticipated conduct of

state officers regulating electronic bingo.  Doc. 39.  Largely echoing Judge De

Ment's opinion in *A&M Enterprises*, Judge Hopkins rejected Set Free's "effective

deprivation" claim as a basis for any ripe constitutional claim.  *Id.* at *7.  In short,

Judge Hopkins concluded that it simply was not the right point in time to evaluate

the adequacy of procedures that the parties had not invoked or a taking that had

not yet occurred.  *Id.* at *8-10.  Finally, Judge Hopkins concluded that, in light of

clear Eleventh Circuit precedent, procedural due process does not demand a

hearing prior to a deprivation of property where a post-deprivation remedy exists.

*Id.* at *10-11 (quoting *McKinney v. Pate*, 20 F.3d 1550, 1562-63 (11th Cir. 1994)).

Accordingly, she dismissed Set Free's action without prejudice.  *Id.* at *12.

　　　With this background in mind, the court now turns to Set Free's claims in

this case.  As a threshold matter, since Defendants have not raided Set Free's

establishment and the court must decide if Set Free's claims are ripe, the court

concludes Set Free's claims are not ripe and that the court must refrain from

exercising jurisdiction given the lack of a developed case or controversy and the

absence of an identifiable constitutional harm or injury.

*(B) Ripeness Doctrine Bars Review of Set Free's Claims*

The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993) (citation omitted). "Ripeness is peculiarly a question of timing.  Its basic rationale is to prevent the courts, through pre-mature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (citation omitted).  A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 580-81 (citation omitted).  To determine whether a claim is ripe, two factors are pertinent: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005).  Thus, "ripeness should be understood as involving the question of when a party may seek preenforcement review of a statute or regulation."  Erwin Chemerinsky, *Federal Jurisdiction* § 2.4.1 (5th ed. 2007).

Courts have recognized both jurisdictional and prudential bases for the ripeness doctrine.  *See Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967); *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995).  "In other words, even if the court

23

may constitutionally exercise jurisdiction, it may refuse to do so, particularly in cases where injunctive relief is sought." *A&M Enters.*, 179 F. Supp. 2d at 1360 (citing *McCarthy v. Briscoe*, 553 F.2d 1005, 1007 (5th Cir. 1977)).  A matter may be less fit for consideration where it is grounded in future events or hypothetical conditions.  *See id.* at 1360-61.  Because a court usually needs some indicia of the procedure or enforcement in question, "[i]n a pre-enforcement challenge it is difficult to determine whether Fourth Amendment rights are seriously threatened." *See  Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 504 n.22 (1982).

"Hardship can sometimes be established if a plaintiff demonstrates that he would have to choose between violating an allegedly unconstitutional statute or regulation and risking criminal or severe civil sanctions."  *See Elend v. Basham*, 471 F.3d 1199, 1211 (11th Cir. 2006).  Importantly, there is no absolute requirement that allegedly unconstitutional enforcement of a law must be imminent or ongoing in order to satisfy *Ex parte Young*'s exception for ongoing and continuous violations of federal law.  *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 2011).  An absolute refusal to intervene in a prospective prosecution "may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of foregoing what he believes to

24

be constitutionally protected activity." *Steffel v. Thompson*, 415 U.S. 452, 462

(1974).   On the other hand:

> When a case involving prospective relief provides a court with no factual assurance that future injury is likely and no clues about its contours should such an injury arise, we are left with only the faintest picture of a possible constitutional transgression occurring someday, somewhere in this country.  Such a claim is not fit for adjudication by this Court.

*Elend*, 471 F.3d at 1211-12.

   (i)  **Void-for-Vagueness**

Set Free asserts that the crux of its complaint is that "[t]wo Alabama

criminal statutes are so vague as to prevent [it] from operating [its] lawful business

for fear of being subjected to unreasonable search and seizure, charged with a

crime without due process, deprived of equal protection under the law and having

private property taken without just compensation," which Judge Hopkins did not

consider.  *See* doc. 2 at 1-2.  Essentially, Set Free claims that the vagueness of the

Alabama Code provisions at issue do not provide the notice and fair warning the

U.S. Constitution demands from criminal laws.

   The Due Process Clause of the Fourteenth Amendment requires that every

criminal statute (1) "give the person of ordinary intelligence a reasonable

opportunity to know what is prohibited," and (2) "provide explicit standard for

those who apply it." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  In

the void-for-vagueness context, "[d]ue process encompasses the concepts of notice

and fair warning." *Bankshot Billiards, Inc. v. City of Ocala*, 634 F. 3d 1340, 1349

(11th Cir. 2011).  "At its core, 'the . . . principle is that no man shall be held

criminally responsible for conduct which he could not reasonably understand to be

proscribed.'" *Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 265 (1997)).

The vagueness challenge, then, relates to the fair warning requirement.  *See id.*

"[T]he touchstone is whether the statute, either standing alone *or as construed*,

made it reasonably clear at the relevant time that the defendant's conduct was

criminal." *Id.* (internal quotation marks and citation omitted)(emphasis added).

   *(a.) Set Free's Vagueness Challenge is Not Ripe*

   "Facial challenges are generally disfavored," in part to avoid speculation, to

promote judicial restraint in questions of constitutional law, and to assure that,

wherever possible, laws embodying the will of the people may be implemented

consistent with the Constitution.  *Dickerson v. Napolitano*, 604 F.3d 732,741-42

(2nd Cir. 2010) (citing *Wash. State Grange v. Wash. State Republican Party*, 552

U.S. 442, 450-51 (2008)).  "Whether a facial void-for-vagueness challenge can be

maintained when, as here, a challenge is *not* properly based on the First

Amendment is unsettled." *Id.* at 743 (emphasis in original).  The Supreme Court

upheld a vagueness challenge outside the First Amendment context, but suggested that such a challenge was permissible only in the presence of a constitutionally protected right.  *See City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999) (Stevens, J., plurality op.); *see also Dickerson*, 604 F.3d 741-42 (characterizing the holding in *Morales*).

The Eleventh Circuit thus limits vagueness inquiries and "review[s] statutes for vagueness concerns only when a litigant alleges a constitutional harm." *Bankshot Billiards*, 634 F.3d at 1349.  These constitutional harms, or injuries, occur in two forms:

> In the first form, a person violates the vague law, is indicted, and then moves the trial court to dismiss the indictment – or reverse a conviction – against him, arguing that he did not receive notice that his conduct was proscribed. . . . The injury remedied by this process is the deprivation of liberty – incarceration – without due process because the criminal defendant was not on notice that his conduct was criminal.

> The second form is implicated when a litigant asks the federal court to review a vague statute before the State seeks to enforce its law, known as pre-enforcement review.  This review deviates from the first form because the State has not yet enforced the vague law; we do not know if the litigant will ever be deprived of his liberty without due process of law.  But we review these claims when the vague law causes a separate injury: the litigant is chilled from engaging in constitutionally protected activity. . . .

> Under this second paradigm, pre-enforcement review provides law-abiding citizens with a middle road between facing prosecution and refraining from otherwise constitutional conduct. . . . It is thus the

plaintiff's desire to engage in constitutionally protected conduct that excepts him from the choice of either violating or complying with the vague law.

*Id.* at 1349-50 (internal quotation marks and citations omitted).

In *Bankshot Billiards*, the plaintiff, a business owner whose establishment was both a pool hall and a dance club, challenged a recently enacted city ordinance on void-for-vagueness grounds.  *Id.* at 1345.  The ordinance prohibited the admission of individuals under twenty-one to certain establishments, and, given the dual nature of Bankshot's business, it believed that the recent legislative changes may force it to exclude individuals under twenty-one from both the billiard hall and the dance club at all times.  *Id.* at 1343.  Rather than violate the ordinance, Bankshot stopped admitting individuals under twenty-one altogether and then challenged the ordinance pursuant to § 1983, seeking damages for the loss of business based on an unconstitutional policy, and asking for declaratory and injunctive relief.  *Id.*

The district court and Eleventh Circuit considered Bankshot's complaint a facial challenge to the ordinance because the plaintiff "did not allege facts about Bankshot's business and then describe how Bankshot was unable to understand the Ordinance as applied to its business model" and because Bankshot identified the deficiencies in the ordinance by describing several hypothetical situations that

28

would have unclear or illogical consequences.  *Id.* at 1345-56.  The district court

dismissed the § 1983 damages claim because Bankshot had not yet suffered any

harm, but it considered the injunctive and declaratory relief despite the pre-

enforcement nature of Bankshot's challenge and found the ordinance

unconstitutionally vague.  *Id.* at 1347-48.

On appeal, the Eleventh Circuit upheld the denial of § 1983 damages, but on

different grounds.  *Id.* at 1349.  The Eleventh Circuit concluded that Bankshot

could not demonstrate a violation of its constitutional rights and, therefore, could

not secure pre-enforcement review on vagueness grounds.  *Id.*  After outlining the

void-as-vagueness paradigm, the court explained that the post-enforcement review

paradigm did not apply because "Bankshot has not been prosecuted[,] . . . lost its

license[, or] . . . been fined."  *Id.* at 1350.

Next the court turned to the pre-enforcement paradigm:

> Bankshot similarly cannot avail itself of the pre-enforcement review paradigm.  It operates a pool hall and wants to admit patrons under twenty-one while also serving alcohol.  The pre-enforcement review paradigm hardly fits our record; **even though Bankshot is 'chilled' from engaging in an activity in which it once engaged, that activity is not constitutionally protected.  Rather, it is normal business activity**; Bankshot is simply unsure whether it may simultaneously serve alcohol and permit entry to persons under twenty one. . . .

> With neither paradigm applicable, we find that Bankshot has not

29

suffered a constitutional injury at the City's hands.  Its lost business was, therefore, the result of its own decision to obey the statute rather than risk prosecution.

*Id.* at 1350-51 (emphasis added).  Because of the procedural posture in *Bankshot Billiards*, the Eleventh Circuit did not address the availability of pre-enforcement injunctive or declaratory relief, though it hinted that if the district court considered that relief below, it should deny the relief in accordance with its analysis regarding the § 1983 damages claim.  *See id.* at 1352 n. 18.  This court now considers precisely that question.

Here, as in *Bankshot Billiards*, Set Free makes a facial challenge to the Alabama Code provisions.  Its attack is based on the variety of devices the definition of "slot machine" might proscribe.  However, Set Free fails to provide details regarding its business, the machines it uses, and the basis for its uncertainty about whether the code applied to it.  Instead, Set Free expresses its legal conclusion that its machines do "not otherwise fit the Alabama Code's definition of an illegal slot machine," and then asserts that because Defendants contend the statutes would include its machines, "[e]ither the statutes are vague or the defendants are misapplying them."[4]  Doc. 2 at 18.

---

[4]Indeed, statements like these underscore the overriding flaw in Set Free's cause of action.  It is clear that Set Free truly believes that it is this misapplication of the law that is at issue – a problem which does not itself create a constitutional violation and one which this court

30

Contrary to Set Free's contentions, it is clear that the code provisions here only chill conduct that constitutes "normal business activity." *See* Bankshot Billiards, 634 F.3d at 1350.  Indeed, it is business activity that Set Free admits is only legal in Alabama because of the Bingo Amendment.  As such, it is merely normal business activity based on a state statutory right.  In other words, it is not constitutionally-based or constitutionally-protected.  As the Eleventh Circuit made clear in *Bankshot Billiards*, pre-enforcement void-for-vagueness claims based upon normal business activity are unavailable in federal courts because the complainant has no constitutional injury.  *Id.* at 1351.  Accordingly, Set Free's void-for-vagueness claim is premature absent some constitutionally protected activity or constitutional injury.  Merely alleging a constitutional violation because of the vagueness or a hypothetical future enforcement that has not changed constitutionally protected behavior is not enough.  *See id.* at 1350.

*(b.) Set Free Failed to Plead Sufficient Facts to Show a Vagueness Claim*

Assuming, however, that the court can consider Set Free's unripe void-for-vagueness claim despite the absence of constitutional harm, Set Free's claim would still fail.  "To succeed [on a facial vagueness challenge], the complainant must demonstrate that the law is impermissibly vague in all of its applications."

---

lacks the power to remedy.

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497

(1982).  Indeed, such a challenge succeeds only when "no set of circumstances

exists under which the [law] would be valid."  *United States v. Salerno*, 481 U.S.

739, 745 (1987).  Additionally, "in evaluating a facial challenge to a state law, a

federal court must, of course, consider any limiting construction that a state court

or enforcement agency has proffered."  *Hoffman Estates*, 455 U.S. at 495 n. 5

(citing *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)).

"As generally stated, the void-for-vagueness doctrine requires that a penal

statute define the criminal offense with sufficient definiteness that ordinary people

can understand what conduct is prohibited and in a manner that does not

encourage arbitrary and discriminatory enforcement."  *United States v. Fisher*, 289

F.3d 1329, 1333 (11th Cir. 2002) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357

(1983)).  "Except where First Amendment rights are involved, vagueness

challenges must be evaluated in the light of the facts of the case at hand."  *Id.*

(citing *United States v. Mazurie*, 419 U.S. 544, 550 (1975)).  The underpinning of

constitutional challenges based on vagueness is well-documented:

> Vague laws offend several important values.  Because we assume
> that man is free to steer between lawful and unlawful conduct, we insist
> that laws give the person of ordinary intelligence a reasonable
> opportunity to know what is prohibited, so that he may act accordingly.
> Vague laws may trap the innocent by not providing fair warning.

> Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Hoffman Estates*, 455 U.S. at 498 (quoting *Grayned*, 408 U.S. at 108-109 (1972)).

But the application of these standards are not mechanical. Courts have long recognized that an ordinance that "simply regulates business behavior" raises less vagueness concerns and is, therefore, subject to a less strict vagueness test. *See Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) (quoting *Hoffman Estates*, 455 U.S. at 499). Moreover, the availability of advisory opinions and clarification from state officials weigh against finding a legislative enactment void for vagueness. *See Georgia Outdoor Network, Inc. v. Marion Cnty.*, 652 F. Supp. 2d 1355, 1361 (M.D. Ga. 2009*)* (collecting cases). Likewise, "[t]he fact that [a piece of legislation] clearly defines some regulated activity precludes a finding of facial vagueness." *Id.* (citation omitted).

Turning now to the case at hand, the crux of Set Free's retooled complaint is that the laws in place "are so vague as to put [it] in danger of criminal prosecution for operating a lawful business," and that the vagueness has led to an injury to its rights under the Fourth, Fifth, and Fourteenth Amendments. Doc. 2 at 15. Essentially, Set Free contends that since its interpretation of what constitutes a

33

"slot machine" differs from Defendants' interpretation, the statute must be unconstitutionally vague because it is impossible to know whether its business violates the law.  Doc. 2 at 18 ("Either the statutes are vague or the defendants are misapplying them.").  Unfortunately, that is an insufficient basis to allege a statute is unconstitutionally vague.[5]

Set Free may not bring a claim to federal court as a constitutional violation simply because it reads the Alabama Code one way and the Alabama courts or state officers refuse to listen.  Indeed, the Eleventh Circuit has affirmed the dismissal of claims that allege misapplication or misinterpretation of state law by state officers that masquerade as substantive and procedural due process claims. *See Beaulieu v. Ala. Onsite Wastewater Bd.*, 373 F. App'x 3, 4-6 (11th Cir. 2010) (rejecting that a misreading and misapplication of an Alabama statute by state officers supports a constitutional claim, noting that the plaintiffs failed to assert a fundamental right to support a substantive due process claim and failed to provide any convincing argument that sufficient process was unavailable at the state level).

---

[5]Set Free reiterates this point in its supplemental brief with regard to Attorney General Strange and Alabama Circuit Judge Houston Brown's dueling interpretations of the code provisions. *See* doc. 20 at 4.  Set Free contends that the fact that Attorney General Strange appealed Judge Brown's decision because he disagrees "mak[es] the statute *ipso facto* unconstitutionally vague."  Doc. 20 at 4.  Set Free offers no support for its contention, and the court finds its contention plainly in contrast with the federal judiciary's well-established history of statutory interpretation.

Notably, Set Free's entire section of its brief devoted to "unconstitutional vagueness" is void of even a single case citation in support of its contentions. Instead, Set Free expounds on why its interpretation of the relevant code provisions is proper, a point which is entirely irrelevant and which underscores the fundamentally state-law questions at the heart of this case. Indeed, much of Set Free's vagueness argument deals with the placement of a clause in Alabama Code § 13A-12-27. Specifically, Set Free argues that the phrase "with the intention that it be used in the advancement of unlawful gambling activity" should apply to "[a] slot machine" and to "any other gambling device." Certainly, that interpretation is plausible. However, so is the converse, that the clause applies only to "gambling devices," which is the interpretation that the Attorney General of Alabama has taken. In any event, "it [is not] unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340 (1952). Set Free may not unilaterally interpret the statute and avoid its teeth merely because it can make an alternative interpretation. *See id.*

At best, Set Free's Complaint alleges that the law is vague because Set Free believes Defendants should apply it differently than they are and may apply it to Set Free. Thus, the Complaint evidences (1) that the law can be applied, and (2)

35

that Set Free has notice of how Defendants would apply the law to it. Moreover, Set Free cites several cases, particularly *Cornerstone*, evidencing that the Alabama courts have further clarified the law. Indeed, as Judge Johnson mused in the face of similar alternative arguments, Set Free's contention that their machines are actually legal under the code provisions makes the likelihood minimal that they can successfully plead those provisions are void for vaguenes. *See Taylor*, 230 F. Supp. 2d at 1294 n. 15. In fact, Set Free has alleged plenty for this court to determine that, if it reached the merits, it would find that Set Free failed to assert a cognizable claim that these states are unconstitutionally vague.

### (ii) Set Free's Procedural Due Process Challenge

Aside from the void-for-vagueness challenge, Set Free's remaining claims assert that Defendants are applying the code provisions unconstitutionally. Importantly, this is distinct from the void-for-vagueness claim that the statute itself is unconstitutional.

"It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decision maker before infringing on a person's interest in life, liberty, or property." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir.1994) (*en banc*). "In this circuit, a § 1983 claim alleging a denial of due process requires proof of three elements: (1) deprivation of a

constitutionally-protected liberty or property interest; (2) state action; and (3)

constitutionally inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232

(11th Cir. 2003). Importantly, "a procedural due process violation is not complete

unless and until the State fails to provide due process." *McKinney*, 20 F.3d at

1557 (citation and internal quotation marks omitted). Thus, "the state may cure a

procedural deprivation by providing a later procedural remedy; only when the

state refuses to provide a process sufficient to remedy the procedural deprivation

does a constitutional violation actionable under § 1983 arise." *Id.*

     "*McKinney* is based on a recognition that the process a state provides is not

only that employed by the board, agency, or other governmental entity whose

action is in question, but also includes the remedial process state courts would

provide if asked." *Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d

1297, 1300 (11th Cir. 2000). "*McKinney* and *Horton* show that though ripeness

and exhaustion do not necessarily control the inquiry into 'constitutionally

inadequate process,' a plaintiff seeking to avail itself of federal jurisdiction still

must allege a case or controversy based on facts ripe for federal adjudication."

*Lord Abbett*, 2011 WL 197959, at *7.

     As Set Free vociferously and correctly contends, *see* doc. 15 at 8-10, the

Eleventh Circuit does not require criminal prosecution or its imminent threat to

sustain a claim for pre-enforcement review of an allegedly unconstitutional state law via § 1983 and *Ex parte Young. See Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336-40.  Indeed, in *Summit Medical*, the Eleventh Circuit rejected the contention that, "under *Ex parte Young*, a state officer's enforcement of an allegedly unconstitutional state law must be imminent, not merely threatened."  *Id.* at 1339.  Thus, Set Free admits Defendants have not seized its machines, that it voluntarily shut down in the face of potential prosecution, and that its vendors voluntarily removed their machines from Alabama.  Doc.1  ¶¶ 30, 32, 36.  However, the court agrees that Defendants created a sufficient threat that the law may be applied to Set Free.

Set Free complains now that, by refusing it a pre-seizure hearing or a venue to challenge the ongoing threat of seizure, Defendants have engaged in unconstitutional conduct.  That is not the law, however, nor is Set Free's claim cognizable.  Put another way, "the thrust of Set Free's argument is that, absent a definitive finding by the courts of Alabama as to the criminality of [the electronic bingo machines], the United States Constitution forbids the initiation of any criminal proceedings.  This simply is not true."  *A&M Enters.*, 179 F. Supp. 2d at 1361.  As in *A&M Enters.*, Set Free here failed to demonstrate or allege any cognizable constitutionally protected activity or any constitutional violation the

38

statute creates with respect to enforcement.

In its own words, "Set Free is not required under federal law to put itself at risk of criminal prosecution in order to have Alabama's law held to be in violation of the United States Constitution."  Doc. 1 ¶ 48.  Likewise, Set Free explains, it "has no state forum available to obtain prospective relief from the enforcement of unconstitutional state statutes."  *Id.* ¶ 49.  Set Free is correct that, as a general matter, a party who must risk constitutional injury or suffer potential criminal prosecution may invoke pre-enforcement review as an exception to the ripeness doctrine and in line with *Ex parte Young*.  *See Steffel*, 415 U.S. at 462; *Summit Medical*, 180 F.3d at 1339-40.  Certainly, the court agrees with Set Free that without some pre-enforcement review, a party is  forced to choose between "the Scylla of intentionally flouting state law and the Charbydis of forgoing what [it] believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding."  *Steffel*, 415 U.S. 452, 462 (1974) (citation omitted).

However, no exception from that conundrum exists merely because a party wants to break an existing state law.  *See Bankshot Billiard*, 634 F. 3d at 1350 (noting that courts afford citizens access to pre-enforcement review where constitutionally protected conduct may be chilled).  Indeed, Set Free's

39

interpretation would force federal courts to enter into countless pre-enforcement decisions regarding routine state criminal laws.  Such a result is untenable and, of course, raises a countless number of federalism issues.  Rather, for federal involvement, at a minimum, there must be significant hardship and, importantly, the hardship must support the claim upon which injunctive relief is based.

Instead, pre-enforcement review based on § 1983 is available here only if Set Free can demonstrate a threat of constitutional harm or injury – or the existence of some protected activity.  *See A&M Enters.*, 179 F. Supp. 2d at 1361. It is neither necessary nor appropriate where a party seeks only to protect its business interests.  Moreover, any purported hardship suffered by Set Free is mitigated by Set Free's license to engage in its business, which disclaimed the legality of the licensed activity under Alabama law.  *See* doc. 1-1 at 21.

To be clear, this court in no way treats the absence of an actual prosecution or seizure as a bar on a federal court's ability to exercise jurisdiction and award declaratory or injunctive relief.  But to seek declaratory relief for a procedural failure, Set Free must show a threat of a violation of federal law – in other words, here, a threat that Alabama procedure is constitutionally inadequate to protect its interests.  Set Free failed to make this showing. For example, Set Free does not assert that Defendant will not secure a search warrant prior to any seizure, nor

does it allege that it will not have a forum to challenge any such seizure. Likewise, Set Free does not allege or show any threat of any procedural inadequacy in the manner Defendants and the Alabama courts carry out their criminal procedure, or in the various procedural mechanisms the Alabama Criminal Code provides for it to challenge a warrant or the seizure of property. *See* doc. 11 at 13; *see also Taylor*, F. Supp. 2d at 1291 (listing at length the procedures available to the plaintiff to challenge any enforcement of the threatened seizure).

This court echoes Judge Watkins in noting that:

> Without an actual seizure and with the electronic bingo machines remaining in the possession of [Plaintiff] and its affiliates, any procedural due process inquiry would amount to pure speculation. The need for speculation is confirmed by the fact-specific nature of procedural due process review. The courts have consistently held that 'due process is flexible and calls for such procedural protections as the particular situation demands.' *Matthews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (citation omitted). Such a flexible inquiry in this case would be predicated on an assumption that a future seizure will happen exactly as the [Plaintiff] alleges. In reality, any future due process inquiry the court would conduct depends on the course of action chosen by Defendants, if they choose to seize the bingo machines. At this stage, the court is left to guess: Will Defendants pursue a criminal prosecution and forfeiture against [Plaintiff's] employees or the [game machine vendors], or instead file a civil forfeiture action, or merely investigate the machines for compliance with Alabama law, or none of the above? These facts are inscrutable at this point, and any flexible procedural due process inquiry is likewise impossible.

*Lord Abbett*, 2011 WL 197959, at *8. Indeed, "[i]f a warrant is obtained, this

means that a detached and neutral state judicial official has made a determination that, based upon the evidence presented, there exists probable cause to believe the Plaintiffs' particular [electronic bingo machines] are illegal under Alabama law," which "would likely satisfy any potential Fourth Amendment questions." *Novel Management*, 2001 WL 1846798, at *4.  The court has no reason to believe Set Free lacks the procedural protections necessary to satisfy Constitutional standards nor can the court speculate as to what procedural deprivation Set Free may suffer if Defendants seize its game machines.

As the Supreme Court explained, "[w]e cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims." *Pennzoil Co v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) (citation omitted).  Indeed, the Court continued, "[a]ccordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.*  Thus, the court cannot proceed under the assumption that state procedures are constitutionally inadequate when Set Free presents no suggestion supporting such a claim.  Conversely, if Set Free alleged that Defendants threatened to seize the machines without a warrant or refused to afford similar parties an opportunity to be heard regarding the legality of the

seizure, perhaps the threat of a procedural due process violation might rise to the

level needed to support pre-enforcement review of state legislation and this court's

subject matter jurisdiction.  Such a scenario, however, is not before this court.

The court returns, then, to the absence of any risk of constitutional harm or

protected activity underlying Set Free's complaint, underscoring the unripe nature

of the alleged § 1983 claim and the impropriety of allowing injunctive relief and

pre-enforcement review in federal court.  Here, Set Free alleges primarily that the

unavailability of an Alabama state-court forum to determine the validity of its

electronic gaming business constitutes a constitutional harm.  Set Free explains

that its complaint is concerned less with the seizure of the machines than with its

"property right in engaging in lawful business," which Defendants apparently

violate by threatening to interpret the law differently.  Doc. 15 at 10 n.7.[6]  Thus,

---

[6] At one point, Set Free alleges that the taking here is the right to participate in lawful gambling activity.  *See* doc. 15 n. 7.  First, such a contention requires precisely the conclusion this court must not make – the determination whether Set Free's business is, indeed, lawful under Alabama law.  Second, federal courts in this state agree that such a claim is not a cognizable taking or deprivation of property where the decision to close was voluntarily made to avoid possible criminal prosecution.  *See Lord Abbett*, 2011 WL 197959, at *8 ("Defendants have not yet initially deprived, much less finally deprive, the [Plaintiff] of any alleged property rights" where no actual seizure had taken place and the bingo operator closed voluntarily and concluding that the "'effective' deprivation argument does nothing to trigger a constitutional deprivation"); *Taylor*, 230 F. Supp. 2d at 1294-1295 (rejecting that the voluntary closing of business supported a deprivation of property, instead finding, at best, an unripe prospective taking claim with regard to the property itself, not the business); *Set Free*, 2:10-cv-01769-VEH, at *6-8, 10-11 (rejecting any substantive or effective deprivation and finding as unripe a potential future procedural deprivation where Set Free voluntarily closed its business in anticipation of the threatened seizure).

Set Free continues, "[a] post-seizure hearing regarding the seizure of machines will not address or provide redress with respect to Set Free's fundamental federal constitutional rights."  *Id.*  Set Free relies heavily on *Summit Medical* to show the Eleventh Circuit's embrace of the *Steffel* line of cases and the availability of pre-enforcement review when a criminal prosecution is threatened but has not yet commenced.  *See* docs. 2 at 20-22; 15 at 9-10 (quoting at length *Summit Medical*, which in turns relies heavily on *Steffel*).

Unfortunately, Set Free's assertion of constitutionally required pre-enforcement review of criminal prosecution finds no support in the law.  Set Free makes the same mistake as the video machine operators before  Judge De Ment in *A&M Enterprises*:

> The fatal flaw in Plaintiffs' argument is the absence of 'constitutionally protected activity' so as to rightfully invoke the authority of this tribunal.  *Steffel* and the line of cases relying thereupon concern instances either where (1) the plaintiff's activity is arguably protected under the Constitution or (2) the statute in question arguably violates the Constitution. . . . The thrust of Plaintiffs' argument is that, absent a definitive finding by the courts of Alabama as to the criminality of video gaming machines, the United States Constitution forbids the initiation of any criminal proceedings.  This simply is not true.

129 F. Supp. 2d at 1361.  The same holds true here: Set Free believes a due process violation exists where they are unable to secure a declaratory judgment as to the validity of their electronic bingo machines.  Unfortunately, the law does not

support their contention because Set Free cannot demonstrate any constitutionally

protected activity.[7]

In fact Set Free's reliance on *Ex parte Young* underscores the point, as "*Ex*

*parte Young* . . . and following cases have established the doctrine that, *when*

*absolutely necessary for protection of constitutional rights*, courts of the United

States have power to enjoin state officers from instituting criminal actions."

*Younger v. Harris*, 401 U.S. 37, 45 (1971) (emphasis added).  Here, however, Set

Free failed to show what recognized "constitutional right" intervention and pre-

enforcement review is "absolutely necessary" to protect.

Similarly, Set Free's reliance on *Idaho v. Coeur d'Alene Tribe of Idaho*,

521 U.S. 361, 270-71 (1997), for the proposition that "the lack of availability of a

state law forum for redress of federal interests subjects the matter to jurisdiction of

the federal court" is misplaced. Doc. 2 at 20.  Set Free has not shown a cognizable,

ripe federal interest.  Undoubtedly, an interest in procedural or substantive due

process is sufficiently federal, but such an interest is simply not yet threatened in

---

[7] Set Free also argues: "Of course a federal court has such jurisdiction.  Otherwise, the entire civil rights movement would not have gotten beyond the schoolhouse door."  Doc. 15 at 9. The court bristles at the implied comparison between the constitutional rights pursued valiantly during the civil rights movement – rights fundamental to equality and liberty – and Set Free's right to continue operating electronic bingo gaming.  Such a comparison is inappropriate, misplaced, and an affront to the brave women and men who risked their lives and in some cases lost their lives to obtain the basic rights guaranteed to them by the Constitution and other federal laws.

this case.

As the case law unequivocally states, there is no constitutional right to a pre-deprivation hearing.  The Fourteenth Amendment only commands "that some kind of hearing is required at some time before a state *finally* deprives a person of his property interests."  *Parratt v. Taylor*, 451 U.S. 527, 540 (1981) (emphasis added) (overruled on other grounds).  Here, defendants have not finally deprived Set Free of anything.  And contrary to Set Free's clear belief otherwise, nothing in the U.S. Constitution requires Alabama courts to give declaratory judgments anytime a prosecution or seizure of alleged contraband must occur.  Thus, there exists no basis to form a ripe § 1983 claim for injunctive or declaratory relief, regardless of *Ex parte Young*.

As Judges Hopkins, Johnson, Watkins, and Buttram explained well, Set Free certainly has a right to some form of hearing if and when it is deprived of its property, but procedural due process simply does not require a forum prior to any seizure or law enforcement.  And because Set Free has not alleged any inadequacy in Alabama's post deprivation process, Set Free consequently failed to present any threat of a constitutional violation or federal injury.  Thus, the case is unripe and, frankly, is the quintessential example of an inappropriate attempt to invoke federal jurisdiction.  While Section 1983 and *Ex parte Young* rightly protect those who

46

face state actors whose actions threaten to violate a party's constitutional right or some federal law, here, though, Set Free's allegations based on the unavailability of a state-court declaratory action simply does not implicate any constitutional right, particularly to procedural due process.

Finally, the court notes Set Free's supplemental brief, in which it cites to and attaches Jefferson County Circuit Judge Houston Brown's decision finding a search warrant he issued for the seizure of machines at another electronic bingo operator was, in fact, procedurally defective based on an officer's misrepresentations regarding the machine when that officer secured the warrant. *See* doc. 20-1 at 11. While Judge Brown's opinion apparently leads Set Free to conclude that it is right about its interpretation of Alabama law, this court notes that the existence of the post-seizure hearing and Judge Brown's decision invalidating the seizure evidences precisely the type of opportunity for a hearing that the Constitution requires. Thus, Judge Brown's decision further undercuts the threat of a procedural due process violation.

### (iii) Takings Claim

Likewise, Defendants have not yet taken or deprived Set Free of its property, nor is a claim based on due process shortcoming of such deprivation yet cognizable. "The Fifth Amendment does not proscribe the taking of property; it

47

proscribes taking without just compensation.  Nor does the Fifth Amendment

require that just compensation be paid in advance of, or contemporaneously with,

the taking." *Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank*, 473

U.S. 172, 193 n. 13 (1985) (internal citation omitted).  "[B]ecause the Fifth

Amendment prescribes takings *without just compensation*, no constitutional

violation occurs until just compensation has been denied." *Id*. at 193 n.13.

(emphasis in original).  "The nature of the constitutional right therefore requires

that a property owner utilize procedures for obtaining compensation before

bringing a § 1983 action." *Id.*

In *Williamson County Regional Planning*, the Court analogized to its

holding in *Parratt*: violations of the Just Compensation Clause are not complete,

cognizable constitutional injuries "'unless or until the State fails to provide an

adequate postdeprivation remedy for property loss.'" *Williamson Cnty. Regional

Planning*, 473 U.S. at 195 (quoting *Hudson v. Palmer*, 468 U.S. 517, 532 n. 12

(1984)).  Indeed, "it would be impossible or impracticable to provide a meaningful

hearing [on procedural adequacy] before the deprivation." *See id.*  "[B]ecause the

Constitution does not require pretaking compensation, and is instead satisfied by a

reasonable and adequate provision for obtaining compensation after the taking, the

State's action . . . is not 'complete' until the State fails to provide adequate

48

compensation for the taking." *Id.*

Here, Defendants have not deprived Set Free of any property nor has Set Free sought any relief from Alabama courts or via any statutory scheme. Rather, Set Free's vendors voluntarily removed their machines from Set Free's establishment to avoid potentially violating criminal laws, and Set Free voluntarily closed its electronic bingo business. Set Free is free, however, to operate any other business, including traditional bingo. Its building and accompanying assets have not changed hands. It is, thus, premature for Set Free to assert a deprivation or taking of property when the property remains in its possession or with its game machine vendors.

"As no deprivation of property has occurred, [Set Free's] fourteenth amendment taking claim is obviously premature." *Hemperly v. Crumpton*, 708 F. Supp. 1247,1250 (M.D. Ala. 1988) (citing *Williamson Cnty.*, 473 U.S. at 193 n.13). Likewise, Set Free has no constitutional right to a hearing prior to a governmental seizure or taking so long as some form of hearing is available after the alleged taking. *Id.* (citation omitted). Thus, even if Set Free could assert a constitutional taking claim based on the seizure of the machines, the availability of a hearing afterwards and the inability of this court to evaluate the just compensation offered or paid for such a taking makes the claim at this juncture

49

simply unintelligible.

**(iv.) <u>Equal Protection Claim</u>**

Though Set Free offers essentially no basis for it, Set Free asserts a

violation of the Equal Protection Clause of the Fourteenth Amendment as a basis

for its § 1983 claim.  As best the court can tell, Set Free's equal protection claim is

based on the belief that Defendants have allowed certain electronic bingo facilities

outside of Jefferson County to remain open.  *See* doc. 2 at 14.  However, Set Free

is not a member of a protected class nor does Defendants' threat implicate a

fundamental right.  Thus, to prevail, Set Free would have to assert the absence of

any rational basis for the actions of the state officers.  Set Free cannot do so at this

juncture because no process of selection or discriminatory enforcement of the law

involves Set Free.

Once again, this court finds Judge De Ment's explanation apt and adopts it

here:

> Plaintiffs' equal protection claims fare no better.  Plaintiffs assert a
> dubious claim of discriminatory enforcement such that in the state of
> Alabama, some prosecutors are [enforcing the law while others are not].
> Presumably the effect of the injunction entered by the court in this
> regard would be to require uniformity in the prosecutorial discretion of
> state agents.  The court need not address the grave federalism issues
> posed by such a request, for the Eleventh Circuit has held that
> circumstances such as these are not ripe for adjudication.  *Florida
> Businessmen for Free Enterprise v. Hollywood*, 673 F.2d 1213, 1220

> (11th Cir. 1982) ("Regardless of the risk of discriminatory enforcement
> the Merchants may raise this claim only in post-enforcement proceeding
> when the possibility of selective enforcement has 'ripen[ed] into a
> prosecution'") (quoting *Hoffman Estates*, 455 U.S. at 503 n.1, 102 S. Ct.
> 1186).   Absent a more concrete factual scenario from which to
> determine the rationality of the basis underlying the different modes of
> *potential* prosecutions, the court cannot address Plaintiffs' equal
> protection claims.

*A&M Enters.*, 179 F. Supp. 2d at 1362 (emphasis in original).

Likewise, here, Set Free's equal protection claim, to the extent alleged, is
not ripe.  Although, Set Free alleges that Defendants have enforced the Code
differently as to various bingo operators, Defendants have not yet applied the
provisions to Set Free.  Therefore, the court cannot evaluate any rational basis for
such an application.  Likewise, the court cannot compare machines present at one
bingo operator's facility to those present at another given the hypothetical nature
of the prosecution Set Free alleges it might suffer.  In short, the time is not ripe for
Set Free's claim, nor has it asserted any basis such a claim could succeed.

### (C)  Substantive Due Process

Set Free vaguely asserts a violation of its substantive due process rights.
"The substantive component of the Due Process Clause protects those rights that
are 'fundamental,' that is, rights that are 'implicit in the concept of ordered
liberty.'"  *McKinney*, 20 F.3d at 1556 (internal citation omitted).  Set Free explains

51

that the "threshold issue" is not the machines but "the violation by the defendants of Set Free's overall right to engage in lawful gambling as permitted by amendment to the Alabama Constitution."  Doc. 15 at 10 n.7.  In other words, Set Free concedes that the right it seeks to protect is the "overall right to engage in lawful gambling as permitted by amendment to the Alabama Constitution" – i.e., a right based on state law.  *See id.*  The United States Constitution and the "concept of ordered liberty" provide no such right.  "[S]tate law based rights constitutionally may be rescinded so long as the elements of procedural - not substantive - due process are observed."  *McKinney*, 20 F.3d at 1556.

Set Free's right to do business as an electronic bingo operator is established, if at all, by the Bingo Amendment, not the United States Constitution, and it therefore is not a fundamental right.  *See Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (rejecting as futile a proposed amendment to a complaint bringing a substantive due process claim because the plaintiff's "right to do business in Florida as a viatical settlement provider is established under [Florida law], not the Constitution, and is therefore not a fundamental right"); *see also Bankshot Billiards*, 634 F.3d at 1350 (holding that the right to engage in normal business activity is not constitutionally protected just because it is activity the plaintiff previously engaged in); *Taylor*, 230 F. Supp. 2d at 1295 n. 19 ("The

court knows of no constitutionally protected right to operate a video arcade."); *Set Free*, 2:10-cv-01769-VEH, at *6 n.1 (construing the plaintiff's claim only as one of procedural due process).  Moreover, the Ordinance providing for the license that forms the basis of Set Free's property right to engage in electronic bingo specifically disclaimed the legality of electronic bingo under Alabama law.  Doc. 1-1 at 21.  Indeed, Midfield went so far as to inform prospective license-holders that if a court ruled electronic bingo illegal, a license holder has no recourse with Midfield nor opportunity for a refund.  *Id.*

Set Free apparently believes the United States Constitution protects a fundamental right to engage in whatever business it chooses as long as it subjectively believes its business is in compliance with relevant state laws, regardless of whether state official, including the state judge who issues the hypothetical warrant for the hypothetical seizure, disagree.  The court finds no support for this contention and notes that Set Free points to no such substantive right to due process.  In the final analysis, the claim here fails because Set Free has not presented a cognizable substantive due process claim.

*(D) Additional Considerations Caution Against the Exercise of Federal Jurisdiction*

Finally, the court notes that the relief Set Free requests in this case would

require this court to advance upon clearly unsettled areas of Alabama law.  Tenets of abstention and federalism caution against interference in a state's implementation of unique state constitutional provisions via its criminal laws, especially where those concerns may adequately be determined by an ongoing case in that state's court.  *See Reetz v. Bozanich*,397 U.S. 82, 85-87 (1970) (finding abstention necessary where the case involves a unique provision to the state's constitution and the statute may be clarified by state court decisions); *see generally Younger v. Harris*, 401 U.S. 37 (1971); *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).  At several points in its complaint and accompanying memorandum, Set Free makes clear its belief that the operation of electronic bingo machines is legal.  Indeed, Set Free argues: "Because its bingo gambling operation is lawful under the Amendment and Bingo Ordinance, Set Free cannot possibly possess the intention to advance unlawful gambling activity.  It seeks only to advance lawful gambling activity pursuant to the Amendment and the Bingo Ordinance."  Doc. 2 at 18.  Of course, Set Free's argument puts the cart before the horse.

The presumption that Set Free's conduct is legal is not one the court may likewise entertain in light of Defendants apparent assertion to the contrary.  Indeed, it is the very legality of this conduct that this court cannot and should not

54

address, particularly where these same issues are presently being considered in Alabama courts.  As Judge De Ment aptly explained, "It may well be that Plaintiffs' activities do not violate the Alabama Constitution, but this is a question for the courts of Alabama."  *A&M Enters.*, 179 F. Supp. 2d at 1362; *see also Taylor*, 230 F. Supp. 2d at 1288-89, 1293-94; *Novel Management*, 2001 WL 18446798, at *3.

Notably, Set Free filed a supplemental brief notifying the court of Judge Houston Brown's decision in a similar case and his finding that a search warrant for the seized bingo machines was improperly issued.  *See* docs. 20 and 20-1.  The Alabama Supreme Court has since stayed Judge Brown's opinion and will soon consider the legality of the machines in question under the Alabama Code provisions in question here.  Thus, Set Free may soon have their answers without need for federal court interference.

Likewise, "[t]he general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional."  *Spielman Motor Sale Co. v. Dodge*, 295 U.S. 89, 95 (1935).  "To justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights."  *Id.*; *see also Wooley v. Maynard*, 430 U.S. 705, 711-12 (1977) (noting the normal broad

prescription on enjoining criminal statute unless it is necessary to protect

constitutional rights, but allowing injunctive relief for First Amendment protection

after the plaintiff was prosecuted under the same law five separate times).

     As the court explained previously, Set Free has identified no constitutional

right or element at stake in the chilled conduct, aside from a mere property right it

claims in its right to engage in bingo operation.  Contrary to what Set Free

believes, that is simply not the type of exceptional circumstance that could support

this court's decision to enjoin the exercise of the state's police power in

application of a state's criminal laws.  *See Doran v. Salem Inn, Inc.*, 422 U.S. 922,

931 (1975); *Spielman Motor Co.*, 295 U.S. at 95; *see also Taylor*, 230 F. Supp. 2d

at 1296-97 (noting the court's reluctance to consider state prosecution of gambling

with the same constitutional concerns of state prosecution of constitutionally

protected conduct).

## CONCLUSION

     For the reasons stated fully above, the court **GRANTS** Defendants' motion

to dismiss because of Set Free's failure to plead facts supporting federal

jurisdiction and the failure to present a controversy ripe for this court's review.

**DONE** the 23rd day of September, 2011.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE